*Mayor and City Council of Baltimore v. Prime Realty Associates, LLC*, No. 53, September Term, 2019.  Opinion by Getty, J.

**CORPORATIONS AND ASSOCIATIONS—DUE PROCESS OF LAW— SUBSTITUTED SERVICE—STATE DEPARTMENT OF ASSESSMENTS AND TAXATION**

The Court of Appeals held that Maryland Rule 3-124(o), which, in limited circumstances, allows for substituted service of process on the State Department of Assessments and Taxation ("SDAT"), satisfies a litigant's due process rights.  A limited liability company's failure to update its resident agent's address with SDAT did not invalidate the plaintiff's attempts of service or use of substituted service upon SDAT, as prescribed in Rule 3-124(o).

Circuit Court for Baltimore City
Case No. 24-C-19-002940
Argued: March 5, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 53

September Term, 2019

_____

MAYOR AND CITY COUNCIL OF
BALTIMORE

v.

PRIME REALTY ASSOCIATES, LLC

_____

Barbera, C.J.
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Getty, J.

_____

Filed: May 12, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

> By the law of this state, the state of its incorporation, the Department was thus conclusively presumed to have been designated as the true and lawful attorney of the corporation to accept service of process. It clearly appears that legitimate efforts were made to notify the defendant corporation of this action and that those efforts were by means reasonably calculated to bring the attention of the corporation to the pendency of the proceeding.
>
> Judge Marvin H. Smith, *Barrie-Peter Pan Schools, Inc. v. Cudmore*, 261 Md. 408, 421 (1971).

A plaintiff in Maryland is permitted under limited conditions to substitute service of process on the state taxation authority when suing a business entity. Initially passed as a statute in 1937, the current provision for substituted service in the District Court of Maryland is Maryland Rule 3-124(o). While proper service is typically made upon a business entity through personal service on its resident agent, the substituted service rule provides a backup provision when regular service has been unsuccessful.

In this case, Petitioner Mayor and City Council of Baltimore (the "City") initiated a receivership action against Respondent Prime Realty Associates, LLC ("Prime Realty") when real property owned by Prime Realty fell into disrepair. The City attempted on several occasions to serve Prime Realty's resident agent at the address on file with the State Department of Assessments and Taxation ("SDAT").

After those attempts proved unsuccessful, the City made substitute service on the designated state agency, currently SDAT, pursuant to Maryland Rule 3-124(o). Prime Realty did not participate in the receivership action until after the court-appointed receiver

sold the property and the sale was ratified by the District Court of Maryland sitting in Baltimore City.  After ratification of sale, Prime Realty moved to vacate the sale, contending that the City did not adequately serve Prime Realty, therefore violating its due process rights.  The District Court denied the motion and Prime Realty appealed.

Before the Circuit Court for Baltimore City, the City argued that Rule 3-124(o) provides an entity with due process because business entities are statutorily required to file the address of its principal office and the name of its resident agent with the State.  The City contended that Prime Realty's due process rights were not violated because the City followed the substituted service requirements set forth in Maryland Rule 3-124(o).  The circuit court disagreed and vacated the sale of the property, holding that Prime Realty's due process rights were violated because the City had knowledge of an alternative address for Prime Realty's resident agent.

We granted the City's petition for a writ of certiorari to determine whether the method of substituted service upon SDAT prescribed by Maryland Rule 3-124(o) satisfies a litigant's due process rights.  For the reasons that follow, we hold that Maryland Rule 3-124(o) provides due process of law.  Accordingly, the circuit court erred in invalidating, on due process grounds, the order ratifying the sale of Prime Realty's vacant property.

**BACKGROUND**

*A.    Receivership, Generally.*

Receivership is a code enforcement tool enacted by the City Council of Baltimore in 1991 that allows the City to abate the public nuisance created by vacant and problem properties.  In a receivership action, the City petitions the District Court to appoint a third

2

party—a "receiver"—to take control of a vacant property and auction it to a buyer who can rehabilitate the property.

To begin the receivership process, the Baltimore City Commissioner of Housing and Community Development (the "Commissioner") must first determine that a building is "vacant" under the terms of the ordinance. A vacant structure is "an unoccupied structure that is: 1. unsafe or unfit for human habitation or other authorized use, or 2. a nuisance property." Bldg., Fire, & Related Codes of Balt. City § 116.4.1.2 ("BFR Codes"); *see id.* § 116.4.1.3 (defining "nuisance property" as an unoccupied structure that has (1) two overdue and final building or fire violations; or (2) six overdue and final exterior premises maintenance violations within a 12-month period). When the Commissioner finds that a building is vacant, it has the authority to order the property owner to rehabilitate or raze the property. *Id.* § 116.1. If a property owner fails to comply with this order, the Commissioner then has the authority to initiate a receivership action and appoint a receiver to rehabilitate or raze the property, or sell it to a buyer that will do the same. *Id.* §§ 116.7, 116.7.1, 121.2. When the Commissioner is seeking the appointment of a receiver for vacant property, it must provide notice to the property owner in accordance with the Maryland Rules. *See id.* § 121.4.

Once the property has been sold, the original property owner has thirty days to file exceptions to the sale. Md. Rule 3-722(f)(3). Following the thirty-day time frame, if the District Court finds the sale was "fairly and properly made," the sale may then be ratified. Md. Rule 3-722(g). After ratification, the receiver is to sign the deed conveying title to the buyer. BFR Codes § 121.14. In addition, the receiver must file an accounting of the sale

3

and a motion to terminate the receivership action with the court. *Id*. § 121.15; Md. Rule 3-722(i), (j). The receiver is able to distribute the proceeds from the sale upon the court ratifying the accounting. Md. Rule 3-722(i), (j).

### B. Receivership Action Against Prime Realty.

This dispute arises out of a receivership action regarding 744 Patterson Park Avenue, a residential property in Baltimore City (the "Property") acquired by Prime Realty in March 2005 as an investment rental property. Prime Realty continued to rent the property for several years after acquisition until, according to Prime Realty, the tenants were robbed and mugged "repeatedly" and moved out. Thereafter, the property remained vacant and its condition deteriorated.

On June 26, 2015, the City issued to Prime Realty a Code Violation Notice and Order declaring the Property "unfit for human habitation or other authorized use pursuant to sections 116–121 of" the Building, Fire, and Related Codes of Baltimore City. The violation notice required Prime Realty to either raze or rehabilitate the Property within thirty days. The City posted the violation notice on the Property and mailed a copy of the notice to a Silver Spring post office box address that Prime Realty used for, among other things, tax and water bills from the City.

By June 28, 2018, three years after the City issued the violation notice, Prime Realty had failed to raze or rehabilitate the Property as required. Accordingly, the City petitioned the District Court of Maryland sitting in Baltimore City to appoint a vacant building receiver. On July 10, 2018, the District Court issued a show cause order requiring Prime Realty to appear before the court on August 15, 2018.

4

The City was ordered to serve the Petition for Appointment of a Vacant Building Receiver (the "Petition") and the show cause order upon Prime Realty prior to August 13, 2018, which, in the case of a limited liability company ("LLC"), under Maryland Rule 3-124(h), is accomplished by service on the resident agent of the LLC. Records at SDAT indicated that Prime Realty was established as a Maryland LLC on January 21, 2005. At that time, Prime Realty's resident agent, Miguel Belen, resided at 1313 South Dahlia Court in Bel Air, Maryland. That address continued to be the address of record on July 10, 2018 when the District Court issued the show cause order.

However, the resident agent Mr. Belen had relocated in 2010 from the Dahlia Court address to Silver Spring, Maryland, where he began using a post office box for Prime Realty's business. Mr. Belen filed a notice with SDAT of this address change in 2011. Consistent with SDAT regulations that prohibit a business entity from registering a post office box address as the address for its resident agent, SDAT issued a rejection notice to Prime Realty's former address on file—here to Mr. Belen at the Dahlia Court address. Prime Realty never responded to correct this filing.

In serving the show cause order, the City mailed, by both regular and certified mail, copies of the Petition and order to the Dahlia Court address. The City also unsuccessfully attempted to serve Mr. Belen personally by private process server on July 20 and 27, 2018, at the Dahlia Court address. On the proof of service form, the process server noted "no answer" as the reason for inability to make service.

In light of the failure to serve, the District Court postponed the show cause hearing and issued an updated show cause order which extended the service deadline to September 20, 2018 and required Prime Realty to appear on October 3, 2018.

Proceeding under Maryland Rule 3-124(o), which provides, in the case of an LLC and certain other business entities, for substituted service upon SDAT, the City served SDAT a copy of the Petition and updated show cause order on September 5, 2018. Prime Realty did not appear for the October 3, 2018 show cause hearing. As a result, the District Court appointed One House At A Time, Inc. ("One House") as the receiver for the Property.

The City sent Prime Realty a courtesy letter on October 29, 2018, both to the Dahlia Court address and the Silver Spring post office box address, advising that a receiver had been appointed and that the Property would be listed for sale at public auction in December. At the public auction on December 11, 2018, Mohammad Khan acquired the Property for $16,000. Two weeks after the sale of the Property, Mr. Belen filled out an application with the District Court to review the receivership action case file. The application reflects that Mr. Belen requested and received a copy of the receivership action case file. At the time Mr. Belen reviewed the receivership action case file, SDAT records indicated that Prime Realty was operating under a forfeited charter.[1] Prime Realty failed to take any action in this case for another two months until February 15, 2019, when it took the necessary steps to reinstate the charter with SDAT prior to defending the receivership action.

---

[1] Counsel for Prime Realty noted at oral argument that the charter was forfeited for failure to file personal property tax returns with SDAT.

The District Court received the report of sale from One House on January 10, 2019. The report was also mailed, by both certified and regular mail, to Prime Realty at the Dahlia Court address. Shortly thereafter an additional notice of the sale was posted on the Property. Almost a month after receiving the report of sale, the District Court ratified the sale of the Property to Mr. Khan. One House and Mr. Khan settled on March 4, 2019, with the final accounting of the settlement reflecting that One House proposed to distribute $3,182.67 to Prime Realty.[2]

The District Court received the final accounting on March 14, 2019. The next day, Prime Realty filed a Verified Motion to Vacate, Revise and Strike Judgment ("Motion to Vacate") contending that the City did not adequately serve Prime Realty, therefore violating its due process rights. Four days later, the City responded with an Opposition to Prime Realty's Motion to Vacate. On March 29, 2019, the District Court issued an order denying Prime Realty's Motion to Vacate. Accordingly, on April 22, 2019, the District Court ratified the final accounting, ordered One House to disburse the remaining funds, discharged One House from its appointment, and closed the case.

Prime Realty filed a Notice of Appeal on April 30, 2019. Before the Circuit Court for Baltimore City, Prime Realty contended that the City's use of substituted service on SDAT pursuant to Maryland Rule 3-124(o) was in violation of Prime Realty's due process rights. The circuit court granted Prime Realty's Motion to Vacate, citing the City's

---

[2] This number reflects the distribution to the record lien holder (Prime Realty) after auctioneer's fees, receiver's attorneys' fees, the receiver's lien, and the City's attorneys' fees.

knowledge of the "homeowner's whereabouts above and beyond which SDAT had in their records," i.e. the Silver Spring post office box address.

The City then petitioned for, and this Court granted, a writ of certiorari. *Mayor & City Council of Balt. v. Prime Realty Assocs., LLC*, 466 Md. 310 (2019). The City presents two questions for our consideration:

(1) Does Md. Rule 3-124(o), allowing for substituted service upon SDAT, provide due process of law?

(2) Did the [circuit] court err in invalidating, on due process grounds, the order ratifying the sale of Prime Realty's property when Prime Realty claimed lack of notice but the City effectuated substituted service on SDAT and Prime Realty's lack of notice was a result of its failure to provide SDAT a current, lawful address for its resident agent?

For the reasons that follow, we answer both questions in the affirmative. Maryland Rule 3-124(o) provides due process of law. Accordingly, the circuit court erred in invalidating, on due process grounds, the order ratifying the sale of Prime Realty's vacant property. We therefore reverse the judgment of the Circuit Court for Baltimore City.

**STANDARD OF REVIEW**

The circuit court's determination to vacate the City's receivership action, to the extent that this is a factual finding, will not be set aside unless clearly erroneous. *See Bottini v. Dep't of Fin.*, 450 Md. 177, 187 (2016) ("We give due regard to the trial court's role as fact-finder and will not set aside factual findings unless they are clearly erroneous." (quoting *Breeding v. Koste*, 443 Md. 15, 27 (2015))). However, the legal analysis of a circuit court and its interpretations of relevant statutes receives no deference. *Friendly Fin. Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc.*, 378 Md. 337, 342–43 (2003).

8

Interpretation of a Maryland Rule is a question of law and is therefore reviewed *de novo*. *State v. Schlick*, 465 Md. 566, 573 (2019).

## DISCUSSION

### A.     *The Parties' Contentions.*

The City contends that the method of substituted service provided in Maryland Rule 3-124(o) satisfies notice requirements and provides due process of law to resident agents on behalf of their principal entities.  The City asserts that the statutory requirements for an LLC place on an LLC the responsibility to register the name of its resident agent and the address of its principal office with the State.  According to the City, the purpose of the resident agent is to accept legal service of process on behalf of the entity, therefore the LLC statutory framework affirms that substituted service upon SDAT would provide the proper notice to satisfy due process.

In arguing that it strictly complied with Rule 3-124(o), the City recounts its attempts to personally serve Prime Realty's resident agent on July 20 and 27, 2018 at the Dahlia Court address prior to serving SDAT on September 5, 2018.  The City contends that its strict compliance with the service methods prescribed in Rule 3-124(o) ensured Prime Realty's due process rights were satisfied.  Accordingly, the City concludes that the circuit court erred in vacating the order ratifying the sale of Prime Realty's vacant property.

Prime Realty argues that it has been deprived of proper notice because the City had knowledge of the Silver Spring post office box address evidenced by the fact that the City mailed the initial violation notice to that address.  Additionally, Prime Realty cites this Court's holding in *St. George Antiochian Orthodox Christian Church v. Aggarwal*, 326

9

Md. 90 (1992), in contending the City was required to go above and beyond the service requirements of Rule 3-124(o) to provide due process. *See Aggarwal*, 326 Md. at 104 (holding that a tax sale purchaser failed to comply with the notice requirements for a foreclosure action because the tax sale purchaser had knowledge that the address being used for service was a bad address).

In order to address Prime Realty's contention that the City violated Prime Realty's due process rights by only attempting service of process at the address on file with SDAT, we must first determine whether Rule 3-124(o)'s method of substituted service provides due process.

**B.** ***Maryland Rule 3-124(o) Legislative History.***

An understanding of Maryland Rule 3-124(o)'s history is necessary to appreciate and recognize how the method of substituted service upon SDAT became a well-accepted vehicle for service of process. From its inception over eighty years ago as a statute and its later incorporation into the Court's revision of the rules of procedure in the District Court beginning in 1971, substituted service upon SDAT has a deep-rooted foundation in Maryland's legal history.[3] As discussed below, the history of the current rule reflects both a policy decision of the General Assembly and a procedural decision of the judiciary to provide alternative methods of service of process on business entities. The policy and

---

[3] These deep roots extend to other contexts as well. Indeed, the use of substituted service upon a government entity that a defendant must register with is a time-honored device. For example, the attorney disciplinary rules provide for substituted service on the Client Protection Fund. Md. Rule 19-708; 19-723(b).

procedure still exist in the Maryland code and Maryland Rules today. Our inquiry into the legislative history of Rule 3-124(o) begins with its statutory origins.

The first version of the substituted service statute originated as a 1937 chapter law:

> If any corporation of this State, or any foreign corporation required by any statute of this State to have a resident agent, has not a resident agent, or has one or more resident agents and two unsuccessful attempts have been made on different business days to serve process upon each of its resident agents, such corporation shall be conclusively presumed to have designated the State Tax Commission as its true and lawful attorney authorized to accept on its behalf service of process in the action in which such process issued, and in such case such process may be served upon the State Tax Commission as the true and lawful attorney of such corporation.

1937 Md. Laws, ch. 504, § 105. This chapter law was codified as § 111(d) of Article 23 (at that time the Corporations Article) of the Annotated Code of the Public General Laws of Maryland. After minor amendments in 1943,[4] § 111 was repealed and recodified as part of a complete revision of Article 23 in 1951. 1951 Md. Laws, ch. 135, § 92. But for updated cross-references, § 92—the new service of process statute—mirrored former § 111.

In 1957, the new publisher of the Maryland code, the Michie Company, published an updated code. *See* Alan M. Wilner, *Blame it all on Nero: Code Creation and Revision in Maryland* (1994). While it followed the 1951 code organization where it could, the 1957 code renumbered, among others, several of the sections of Article 23. *Id.* Section 92 was renumbered as § 96 but remained the same in substance.

---

[4] *See* 1943 Md. Laws, ch. 733.

11

In 1967, § 96 was repealed among other sections of Article 23 and was reenacted as parts of § 127C of Article 23 and § 75B of Article 75. 1967 Md. Laws, ch. 532, § 2. Article 75, § 75B(a)(2) provided the same substance as § 96 but also reflected that the newly created SDAT took over the functions of the former State Tax Commission with respect to corporate filings and resident agents. *Id.* Article 23, § 127C provided in relevant part that "[a]ny notice required by law to be served upon any corporation of this State . . . by personal service upon a resident agent . . . may be served upon such corporation in the manner provided in Section 75B of Article 75." *Id.*

In 1973, § 75B was repealed. 1973 Md. Laws., 1st Spec. Sess., ch. 2. Two years later, in 1975, when Article 23 was recodified as the Corporations and Associations Article, § 127C was repealed and replaced with § 1-401. 1975 Md. Laws, ch. 311. Section 1-401 specifically cross-referenced "Maryland Rule 106" and "Maryland District Rule 106." It provided, in relevant part:

> (A)  Service of Process on Resident Agent.
>
> Service of process on the resident agent of a corporation or on the resident agent of any other person binds the corporation or other person in any action, suit, or proceeding which is pending, filed, or instituted against it under the provisions of this article.
>
> (B)  Service of Notice on Corporation Under Rule 106.
>
> (1)  Any notice required by law to be served by personal service on a resident agent or other agent or officer of any Maryland corporation or of any foreign corporation required by statute to have a resident agent in this state may be served on the corporation in the manner provided by Maryland Rule 106 or Maryland District Rule 106 relating to the service of process on corporations.

12

> (2)     Service under Maryland Rule 106 or Maryland District Rule 106 is equivalent to personal service on a resident agent or other agent or officer of a corporation mentioned in paragraph (1) of this subsection.

*Id.* Section 1-401 exists today in a substantially similar form, although it was repealed and reenacted with amendments in 1992 to include LLCs, among other business organizations.[5] 1992 Md. Laws, ch. 536. We next turn to the long history of the substituted service rule in the Maryland rules of procedure.

---

[5] Section 1-401 of the Corporations and Associations Article of the Maryland Code (1957, 2014 Repl. Vol., 2019 Supp.) currently provides as follows:

> (a) Service of process on the resident agent of a corporation, partnership, limited partnership, limited liability partnership, limited liability company, or real estate investment trust, or any other person constitutes effective service of process under the Maryland Rules on the corporation, partnership, limited partnership, limited liability partnership, limited liability company, or real estate investment trust, or other person in any action, suit, or proceeding which is pending, filed, or instituted against it under the provisions of this article.

> (b)(1) Any notice required by law to be served by personal service on a resident agent or other agent or officer of any Maryland or foreign corporation, partnership, limited partnership, limited liability partnership, limited liability company, or real estate investment trust required by statute to have a resident agent in this State may be served on the corporation, partnership, limited partnership, limited liability partnership, limited liability company, or real estate investment trust in the manner provided by the Maryland Rules relating to the service of process on corporations.

> (2) Service under the Maryland Rules is equivalent to personal service on a resident agent or other agent or officer of a corporation, partnership, limited partnership, limited liability partnership, limited liability company, or real estate investment trust mentioned in paragraph (1) of this subsection.

The substituted service statute first appeared in the rules of procedure for the District Court in 1971, when the District Court of Maryland was created. The rule began as Rule 106(e) of the Maryland District Rules—a set of rules parallel to, but not exactly mirroring, the Maryland Rules which governed practice in the circuit courts.[6] As noted above, this rule was cross-referenced, along with the circuit court equivalent (Maryland Rule 106), in the 1975 version of § 1-401 of the Corporations and Associations Article. In pertinent part, Maryland District Rule 106(e) provided:

> 1. If No Resident Agent or Unsuccessful Attempt to Serve.
>
> If a corporation required (by statute of this State) to have a resident agent, (i) has not a resident agent, or (ii) has one or more resident agents, and unsuccessful attempts have been made on different business days to serve process either twice upon one resident agent or once upon each of two resident agents, process may be served upon the State Department of Assessments and Taxation.

---

[6] The Maryland District Rules were drafted and approved by the Court of Appeals Standing Committee on Rules of Practice and Procedure in 1971. *See* Meeting Minutes, *Court of Appeals Standing Committee on Rules of Practice and Procedure* (January 7, 1971). The Committee recommended "to publish the District Court rules in a volume separate from the Maryland Rules, with chapter and rule numbers paralleling those of the Maryland Rules where feasible, and to re-state in full, rather than incorporate by reference, whatever Maryland Rules are adopted as District Court Rules." *Id.* at 3–4. "[T]he Rules Committee reviewed and extensively revised and redrafted the proposals of the Subcommittee on District Court Rules [and] made its report and recommendation to the Court of Appeals" on June 22, 1971. Meeting Minutes, *Court of Appeals Standing Committee on Rules of Practice and Procedure* (May 20, 1971). The Court approved and adopted the Maryland District Rules "for the governance of the District Court of Maryland" on June 28, 1971. *Order Adopting the Maryland District Rules and Amending and Supplementing Maryland Rules of Procedure* (June 28, 1971).

2. How Made.

> Service of process upon the State Department of Assessments and Taxation shall be made by serving two copies of the process, with the fee required by law, in the office of the Department upon the Director or a person designated by him for that purpose. The fee shall be taxable as costs in the case.

Ann. Code of The Public General Laws of Maryland (1981 Repl. Vol.), Md. Dist. Rule 106.

Maryland District Rule 106 was the predecessor to Maryland Rule 3-124(o). In 1976, this Court directed the Rules Committee to study all of the rules and determine whether substantive changes were necessary. The project became an extensive rewrite of the rules. On April 6, 1984, this Court adopted Titles I through IV of the new rules—Title III included Rule 3-124. As compared to Maryland District Rule 106, Rule 3-124(o) expanded both the grounds for the use of substituted service to include when the resident agent has died and broadened the applicability to include any entity required by the State to have a resident agent. Today, Rule 3-124(o) provides:

> Service may be made upon a corporation, limited partnership, limited liability partnership, limited liability company, or other entity required by statute of this State to have a resident agent by serving two copies of the summons, complaint, and all other papers filed with it, together with the requisite fee, upon the State Department of Assessments and Taxation if (i) the entity has no resident agent; (ii) the resident agent is dead or is no longer at the address for service of process maintained with the State Department of Assessments and Taxation; or (iii) two good faith attempts on separate days to serve the resident agent have failed.

The longstanding history of Rule 3-124(o) demonstrates a policy decision of the General Assembly and of this Court for efficiency in judicial procedures involving service of process. From what we can tell, this is the first time the rule has been challenged on due

15

process grounds in the rule's 83-year history. We proceed to address the due process challenge.

## C.    Due Process Analysis of Maryland Rule 3-124(o).

It is well established that "procedural due process requires that litigants must receive notice, and an opportunity to be heard." *Pickett v. Sears, Roebuck & Co.*, 365 Md. 67, 81 (2001). The notice provided must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). It is also well established that potentially less effective methods of service may be employed where traditional or more effective methods of service have been attempted and were unsuccessful. *Miserandino v. Resort Props., Inc.*, 345 Md. 43, 65 (1997). Further, the service of process utilized on a business entity may be different than that which would be used to serve an individual. *Id*. at 60. Rule 3-124(o)'s well established legislative history coupled with the statutory requirements expected of an LLC demonstrate that substituted service upon SDAT is a practical method of service which affords litigants their due process rights.

The privileges associated with an LLC, such as tax benefits and liability protections, are afforded with the expectation that an LLC will fulfill its statutory obligations. An LLC is a statutory entity, whose formation only occurs upon SDAT's acceptance of its articles of organization. Maryland Code (1992, 2014 Repl. Vol., 2019 Supp.), Corporations and Associations § 4A-202(b). Additionally, an LLC is statutorily required to have a principal office within the state of Maryland as well as a resident agent. *Id*. § 4A-210(a). The

16

resident agent is designated as the individual to accept service of process on behalf of the entity. *Id.* § 1-401. The LLC is required to file with SDAT an accurate address for its principal office and resident agent. *Id.* § 4A-210. Further, if either of these addresses change, an LLC is also required to file the appropriate change of address notification with SDAT. *Id.* It is the LLC's responsibility to understand and abide by SDAT's policies and procedures for these filings.

Maryland Rule 3-124(o) provides an additional method of service upon an LLC through substituted service on SDAT in three limited circumstances: (1) where the entity has no resident agent; (2) where the resident agent is dead or is no longer at the address for service of process maintained with SDAT; or (3) where two good faith attempts on separate days to serve the resident agent have failed. Md. Rule 3-124(o). This rule is not the default rule for litigants to utilize when attempting service of process. Instead, substituted service upon SDAT is only available in these three limited situations. Further, once service upon SDAT has occurred, SDAT is required to "forward a copy of the process and notice of the service to the defendant at [its] mailing address, if known, or to [its] principal place of business." Maryland Code (1957, 2013 Repl. Vol.), Courts and Judicial Proceedings § 6-307. Since an LLC is statutorily required to register an accurate address for its resident agent with SDAT, the plain language of Rule 3-124(o) ensures that substituted service upon SDAT would apprise the interested parties of the pendency of the action and afford them an opportunity to be heard.

While no court has analyzed Rule 3-124(o) in a due process context, the Court of Special Appeals and the United States District Court for the District of Maryland have both

17

scrutinized Maryland Rule 2-124(o)—Rule 3-124(o)'s sister rule for the circuit court[7]—

and concluded that the method of service affords litigants their due process rights. *See*

*Thomas v. Rowhouses, Inc.*, 206 Md. App. 72 (2012); *Biktasheva v. Red Square Sports,*

*Inc.*, 366 F. Supp. 2d 289 (D. Md. 2005). In *Biktasheva*, the United States District Court

for the District of Maryland addressed a defendant's motion to dismiss grounded in an

insufficiency of service of process claim. 366 F. Supp. 2d at 293. The plaintiffs in the

matter only attempted to serve defendant's resident agent once prior to serving SDAT. *Id.*

Accordingly, the defendant argued that the plaintiffs did not fulfill the two attempted

service requirements under Rule 2-124(o)(iii). *Id.* The court held that because the process

server determined the defendant's resident agent was no longer located at the address on

file with SDAT, service upon SDAT was proper under Rule 2-124(o)(ii). *Id.*

In *Thomas*, the Court of Special Appeals had to determine whether substituted

service upon SDAT was proper where a corporation no longer had a resident agent. 206

Md. App. at 74–75. The Court of Special Appeals relied upon the holding in *Biktasheva*,

in articulating that "when the resident agent cannot be located according to SDAT records,

---

[7] Maryland Rule 3-124(o) is a civil procedure rule for the District Court. Rule 2-124(o) is the rule governing substituted service upon SDAT for the circuit court. It reads in pertinent part:

> [s]ervice may be made upon a . . . limited liability company . . . by serving two copies of the summons, complaint, and all other papers filed with it . . . upon [SDAT] if (i) the entity has no resident agent; (ii) the resident agent is dead or is no longer at the address for service of process maintained with [SDAT]; or (iii) two good faith attempts on separate days to serve the resident agent have failed.

alternative service on SDAT has been deemed proper."[8]  *Id.* at 86.  Both *Thomas* and

*Biktasheva* required the courts to determine whether substituted service upon SDAT was a

proper method of service where the resident agent could not be located at the address on

file with SDAT, and both courts held in the affirmative.

In addition to the recent analyses of substituted service in *Thomas* and *Biktasheva*,

substituted service has been challenged, albeit in different contexts, and upheld several

times in the last sixty years.  *See Barrie-Peter Pan Schs., Inc. v. Cudmore*, 261 Md. 408,

421 (1971) ("By the law of this state, the state of its incorporation, [SDAT] was thus

conclusively presumed to have been designated as the true and lawful attorney of the

corporation to accept service of process.  It clearly appears that legitimate efforts were

made to notify the defendant corporation of this action and that those efforts were by means

reasonably calculated to bring the attention of the corporation to the pendency of the

proceeding."); *Gkiafis v. S.S. Yiosonas*, 342 F.2d 546, 558 (4th Cir. 1965) ("[T]he notice

provisions of the Maryland substituted service procedure [to serve foreign corporations]

are adequate."); *Speir v. Robert C. Herd & Co.*, 189 F. Supp. 432, 436 (D. Md. 1960)

(same).

---

[8] In *Thomas*, the corporation forfeited its corporate charter (like here), did not have a resident agent, and the corporate director listed in the articles of incorporation was deceased.  206 Md. App. at 74–75.  The court made clear that, even though a corporation that has forfeited its charter is generally said to be a legal non-entity, a corporation continues to exist for some limited purposes, including to receive service "in any method which would have been appropriate when the corporation was in existence," such as substituted service on SDAT under Rule 2-124.  *Id.* at 80–86.

We agree with the holdings of the Court of Special Appeals and the U.S. District Court for the District of Maryland. The longstanding legislative history of Md. Rule 3-124(o), as well as the statutory obligations of an LLC, demonstrate that this method of service affords litigants their due process rights. It is the LLC's obligation to accurately record its resident agent's address with SDAT and to understand the requirements restricting the use of post office box addresses.

The City attempted to serve Prime Realty's resident agent at the address on file with SDAT on July 20, 2018 and July 27, 2018, prior to initiating substituted service on SDAT on September 5, 2018. Additionally, substituted service upon SDAT would have been acceptable once the City became aware that Prime Realty's resident agent was no longer located at the address on file with SDAT as prescribed in subsection (ii) of Rule 3-124(o). Prime Realty's failure to accurately update its resident agent's address with SDAT does not invalidate the City's attempts of service, and therefore does not constitute a due process violation.[9]

Prime Realty relies upon this Court's holding in *Aggarwal* to argue that the City's knowledge of an additional address for its resident agent nullifies the City's service attempts prior to serving SDAT. *Aggarwal* required this Court to determine what steps were necessary of a tax sale purchaser to notify the property owner of an impending

_____

[9] Even if we found a due process violation, this would have been harmless error because Prime Realty's resident agent inspected the receivership file on December 28, 2018, conferring actual notice of the receivership action on Prime Realty. Prime Realty could have petitioned the District Court to remove the receiver.

20

foreclosure. 326 Md. at 92. The tax sale purchaser in *Aggarwal* had actual knowledge that the address he was using in attempting to notify the property owner was a "bad address." *Id.* at 99. Evidence demonstrated not only that the tax sale purchaser knew the address would not accomplish actual notice, but that he also knew the address corresponded to a vacant lot. *Id.* at 99–100.

*Aggarwal* is not analogous to this matter. *Aggarwal* did not include any discussion of Rule 3-124(o) or the method of substituted service on SDAT, as this was not the method of service employed by the tax sale purchaser. The City's knowledge of the Silver Spring post office box address does not correlate to the City having actual knowledge that the Dahlia Court address was a "bad address." As previously discussed, Rule 3-124(o) provides litigants with due process and Prime Realty's failure to accurately update its resident agent's address with SDAT does not invalidate the City's service attempts.

## CONCLUSION

We hold that Maryland Rule 3-124(o), which allows for substituted service of process on an LLC by service on SDAT, satisfies a litigant's due process rights. Prime Realty's failure to update its resident agent's address with SDAT does not invalidate the City's attempts of service or the City's use of substituted service upon SDAT, as prescribed in Rule 3-124(o). Therefore, it was error for the circuit court to invalidate, on due process grounds, the order ratifying the sale of Prime Realty's vacant property. Accordingly, we reverse the judgment of the Circuit Court for Baltimore City.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. COSTS TO BE PAID BY RESPONDENT.**

21